Filed 12/20/13

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re S.B., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> R.B., <br><br> Defendant and Appellant. | E058328 <br><br> (Super.Ct.No. J246789) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County. Christopher B. Marshall, Judge. Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Jamila Bayati, Deputy County Counsel, for Plaintiff and Respondent.

The San Bernardino County Children and Family Services Department (CFS)

1

intervened on behalf of 12-year-old S.B. and her half-siblings (not involved in this appeal) due to her mother's mental illness and substance abuse, and her father's failure to protect. The parent's submitted at the jurisdictional hearing. At the dispositional hearing, reunification services were granted to mother, who is not a party to this appeal, but father was denied services pursuant to Welfare and Institutions Code[1] section 361.5, subdivision (b)(16), because he was a registered sex offender. Father appealed.

On appeal, father claims that (1) section 361.5, subdivision (b)(16) is inapplicable because he was not required to register as a sex offender under federal law, and (2) there is insufficient evidence to support the court's finding that reunification services would not be in the minor's best interests. We affirm.

BACKGROUND

On November 8, 2012, mother of S.B. (and S.B.'s two half-siblings, M.N., and M.M.) was admitted at Arrowhead Regional Medical Center for suicidal ideation as well as bizarre and aggressive behavior. Mother has eight children altogether and a lengthy history of unstable living arrangements, as well as a history of interventions by child welfare services for all of her children. Some of mother's children are adults. Each of the three children in mother's custody at the time of the current proceedings had a

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise specified.

2

different father.[2]

On November 13, 2012, CFS filed a dependency petition as to 12-year-old S.B., and her half-siblings M.N., and M.M. As to S.B., the petition alleged failure to protect within the meaning of section 300, subdivision (b), due to mother's substance abuse and mental health issues, which interfered with mother's ability to provide adequate and appropriate care, supervision and provisions for the child. As to father, the petition alleged that he had a history of substance abuse which interfered with his ability to provide adequate and appropriate care. Further, it was alleged that he had knowledge of mother's substance abuse and mental health problems but failed to protect S.B. The petition also included an allegation that S.B. had been left with no provision for support within the meaning of section 300, subdivision (g), in that father's whereabouts were unknown. The children were detained with their maternal grandmother.

At the jurisdictional hearing, the parents submitted on the social worker's reports. Those reports outlined mother's history of using marijuana three times daily and the children's statements about chaotic living conditions. Mother admitted she suffered from bipolar disorder but she did not believe she needed medication.

The children reported to the social worker that mother would yell and scream for no reason, hit or push them to the ground or against a wall, and drag S.B. by the hair.

---

[2] Additional information is unavailable because the detention report was not part of the appellate record.

They also reported that mother did not fix meals for them regularly, get them to school on time, or take them for regular medical or dental appointments. The social worker described mother as suffering from psychosis, or delusional thinking, as a related symptom of a manic episode of bipolar disorder.

As to father, the report on which the parents submitted revealed he had custody of S.B. until his arrest and incarceration in 2010 for lewd acts. Father has a lengthy history of marijuana and methamphetamine use, dating back to his teenage years. Father also had an extensive criminal history, including drug related charges, and a 2010 conviction for a violation of Penal Code section 288, subdivision (c)(1), lewd or lascivious acts with a child of 14 or 15 years. Although father was clean and sober for several years while he had custody of S.B., he attributed his commission of the sexual offense to a drug relapse during the three weeks prior to the offense in 2010. He was sentenced to state prison for that offense and was paroled on December 28, 2011. Father is required to register as a sex offender.

The report also included allegations that father had exposed himself to his stepdaughter A.H. and had previously molested A.H.'s cousin, M.Z., on separate occasions in 2010. However, these allegations were not substantiated.

At the dispositional hearing, the court heard testimony from father and the social worker. Father denied any inappropriate conduct with A.H. or M.Z. Although he admitted he was required to register as a sex offender, he wanted to reunify with his

4

daughter.  The court also accepted a stipulation by all parties that if S.B. were to take the stand, she would testify that she is not afraid of her father, wanted a chance to reunify with him, had lived with him from the time she was two or three years of age until she was nine or 10, enjoyed her visits with him, loved him, and would be happy to live with him one day.

The court removed custody of S.B. from her parents and maintained her in the relative placement.  The court found that placement of S.B. with father, the noncustodial parent, would be detrimental.  The court granted services to mother, but denied services to father pursuant to section 361.5, subdivision (b)(16), because he is required to be registered on a sex offender registry under the Adam Walsh Child Protection and Safety Act of 2006 (41 U.S.C. § 16913(a)), as required in section 5106a(b)(2)(B)(xvi)(VI) of the Child Abuse Prevention and Treatment Act of 2006 (42 U.S.C. Sec. 5106a(b)(2)(B)(xvi)(VI).[3]  Father appealed.

---

[3]  Both parties assert that section 361.5, subdivision (b)(16) cites a federal statute which does not exist.  However, there is a section 42 U.S.C. § 5106a**(b)**(2)(B)(xvi)(VI) [bold added].  We presume the statute contains a typographical error due to legislative oversight after reading the entire section together.  Section 5106a(b)(2)(B)(xvi)(VI) relates to requirements that states submit plans to carry out the objectives of the subchapter in return for grant money under the Child Abuse Prevention and Treatment Act (CAPTA).  Section 5106a(b)(2)(B)(xvi)(VI) requires the Governor of the state certify that the state has in effect and is operating a statewide program that includes provisions by which the state does not require reunification of a child with a parent who has been found to have committed certain enumerated offenses, or is required to register as a sex offender under section 16913(a) of that title.  California's enactment of Welfare and

*[footnote continued on next page]*

DISCUSSION

1.      **Section 361.5, Subdivision (b)(16) Was Properly Applied In Denying**

**Reunification Services to Father.**

Father argues it was error to deny him services under section 361.5, subdivision (b)(16), because that subdivision is inapplicable. Father interprets the subdivision to authorize a bypass of reunification services only where registration is "mandated by the Superior Court in compliance with 42 U.S.C. sections 5106a(2)(B)(xvi)(VI) and 16913(a)." According to father's interpretation, unless those magic words were pronounced by a superior court judge during his criminal sentencing hearing, and unless he was required to register under federal law, section 361.5, subdivision (b)(16) does not apply. We disagree.

    a.      *Legislative History-CAPTA*

For many years, California's child welfare policies have been shaped by grants from the federal government under the CAPTA, later revised under the CAPTA Reauthorization Act of 2010 (Pub. L. § 111-320, §§ 1, 115.) To be eligible for grant funds under CAPTA, states are required to adopt certain policies and procedures, relating to programs for prevention of child abuse and neglect, and services for families in need

---

*[footnote continued from previous page]*
*[footnote continued from previous page]*
Institutions Code section 361.5, subdivision (b)(16), was intended to satisfy the CAPTA requirement. (Statutes 2012, ch. 847, Sen. Bill 1521.)

under parts B and E of title IV.  (42 U.S.C. §§ 620, et seq., 670, et seq.)  Each state that applies for a grant must submit a state plan which contains a description of the activities that the state will carry out using the grants, and certain assurances.  (42 U.S.C. § 5106a, subd. (b)(2).)

California receives grants for child abuse or neglect prevention programs.  (42 U.S.C. § 5106a.)  To be eligible for these grants, California is required to submit a state plan containing a description of the activities that it will carry out using the grant money (42 U.S.C. § 5106a, subd. (b)(2)), including an assurance that the state plan is coordinated with the state plan under part B of title IV of the Social Security Act (42 U.S.C., § 621, et seq.) relating to child welfare services and family preservation and family support services.  (42 U.S.C. § 5106a, subd. (b)(2)(A).)  Additionally, the state plan must include an assurance that the state has in effect and is enforcing a state law, or has in effect and is operating a statewide program relating to child abuse and neglect that includes provisions, procedures, and mechanisms to assure that the state does not require reunification of a surviving child with a parent who has been found by a court of competent jurisdiction to be required to register with a sex offender registry under section 113(a) of the Adam Walsh Child Protection and Safety Act of 2006 (42 U.S.C. § 16913, subd. (a)).  (42 U.S.C. § 5106a, subd. (b)(2)(B)(xvi)(VI).)

7

b.　*Legislative History - Section 361.5, Subdivision (b)(16).*

Section 361.5, subdivision (b)(16), was added in 2012, as part of Senate Bill 1521. (Stats. 2012, ch. 847.)  Legislative Counsel's Digest explains that the change to section 361.5, subdivision (b), was adopted to conform to CAPTA, specifically, the CAPTA Reauthorization Act of 2010 (Pub. L. § 111-320, §§ 1, 115) among other provisions, which required the amendment of applicable state plans.  (Stats. 2012, ch. 847, p. 1; Sen. Bill No. 1521.)  The bill included as a situation when family reunification would not be required, one where a parent has been required by the court to be registered on a sex offender registry under a specified federal law.  (Legis. Counsel's Dig., Sen. Bill No. 1521 (2011-2012 Reg. Sess.).)

c.　*Legislative History – Adam Walsh Act*

The Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act," or "the Act") was a comprehensive federal statutory scheme designed to protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims.  (Pub.L. No. 109-248 (July 27, 2006) 120 Stat. 587.)  Title I of the Act contains the Sex Offender Registration and Notification Act. (Pub.L. No. 109-248, §§ 101-155; 42 U.S.C. § 16901, et seq.)

Titles II throughVII of the Act provide for Federal Criminal Law Enhancements Needed to Protect Children from Sexual Attacks and Other Violent Crimes (Pub.L. No.

8

109-248, §§ 201-216), Civil Commitment of Dangerous Sex Offenders (Pub.L. No. 109-248, §§ 301-302), Immigration Reforms to Prevent Sex Offenders from Abusing Children (Pub.L. No. 109-248, §§ 401-402), Child Pornography Prevention (Pub.L. No. 109-248, §§ 501-507), Grants Studies, and Programs for Children and Community Safety (Pub.L. No. 109-248, §§ 601-639), and the Internet Safety Act. (Pub. L. No. 109-248, §§ 701-707.)

Title I, the Sex Offender Registration and Notification Act (SORNA) contains a comprehensive national system for the registration of sex offenders and offenders against children. (Pub.L. No. 109-248, § 101, et seq.) That portion of the Act was codified at 42 United States Code, section 16901, et seq. Part A of the subchapter expanded the definition of sex offender, and set out a three-tiered system for classification of sex offenders. Subparagraph (9) of section 16911 defines a "sex offender registry" as a registry of sex offenders maintained by a jurisdiction. Subparagraph (10) of the same section defines a "jurisdiction"[4] to include a state. (42 U.S.C. § 16911, subp. (1)(A).)

Section 16912 requires each jurisdiction to maintain a jurisdiction-wide sex offender registry. (42 U.S.C. § 16912, subd. (a).) Each jurisdiction is required to make the information in the registry available to the public on the Internet, and the Internet site

_____

   [4] Specifically, a "jurisdiction" is defined under SORNA as a state, the District of Columbia, Commonwealth of Puerto Rico, Guam, American Samoa, the Northern Mariana Islands, the United States Virgin Islands, and federally recognized Indian tribes. (42 U.S.C. § 16911, subd. (10).)

is required to interface with the Dru Sjodin National Sex Offender Public Website. (42 U.S.C. § 16918, subd. (a).) The United States Attorney General is required to maintain a national database at the Federal Bureau of Investigation for each sex offender and any other person required to register in a jurisdiction's sex offender registry (National Sex Offender Registry). (42 U.S.C. § 16919, subd. (a).)

Each jurisdiction was given a time limit to implement the provisions of the Adam Walsh Act, with provisions for extensions of time. (42 U.S.C. § 16924.) At the end of the implementation period, a jurisdiction that failed to substantially implement the title would lose 10 percent of the funds otherwise paid to the states under the Edward Byrne Memorial Justice Assistance Grant Program (ref. 42 U.S.C. § 3750, et seq.). (42 U.S.C. § 16925, subd. (a).) These grant funds are intended for use by the states to provide additional personnel, equipment, supplies, contractual support, training, technical assistance, and information systems for criminal justice programs. (42 U.S.C. § 3751, subd. (a).)

d. *Analysis*

Father argues that section 361.5, subdivision (b)(16), does not apply to him because he was not required to register under federal law. He is incorrect.

California has maintained a sex offender registry since 1947. (Stats. 1947, ch. 1124 § 1.) California has not adopted SORNA. (See State of California Sex Offender Management Board's Statement of Position (2009), found at

10

http://www.casomb.or/docs/Adam%20Walsh%20Paper.pdf, as of October 16, 2013.)

SORNA's changes were designed to make more uniform what had remained a patchwork of federal and 50 individual state registration systems. (*Reynolds v. United States* (2012) 565 U.S. ___, ___ [132 S.Ct. 975, 181 L.Ed.2d 935, 939].) Even before SORNA, Congress had enacted the Wetterling Act in 1994 which used the federal spending power to encourage states to adopt sex offender registration laws. (See former 42 U.S.C. § 14071, et seq., repealed by the Adam Walsh Act, Pub. L. 109-248, § 129(a).)

The fact that California has not implemented all of the Adam Walsh Act does not mean that SORNA is inapplicable to him. Under SORNA, each "jurisdiction" is required under federal law to maintain a registry. (42 U.S.C. § 16912, subd. (a).) There have been national standards for sex offender registration since the 1994 enactment of the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Act, which California has implemented. (Former 42 U.S.C. § 14071; see *In re Alva* (2004) 33 Cal.4th 254, 273-274.)[5]

SORNA obligates a sex offender to register and keep the registration current in each "jurisdiction" where the offender resides, is an employee, or is a student. (42 U.S.C.

---

[5] The California Department of Justice makes information about registered sex offenders available to the public via an Internet website, entitled "Megan's Law." (Pen. Code, §§ 290.4, 290.46; see http://www.meganslaw.ca.gov as of October 16, 2013.) This web page has a link to the National Sex Offender Public Website (http://www.nsopr.gov/ as of October 16, 2013) on the home page. Thus, California is compliant with title I of SORNA.

§ 16913, subd. (a); *United States v. Hester* (2d Cir. 2009) 589 F.3d 86, 93.) The fact that a state ("jurisdiction") has not met the administrative requirements of SORNA does not affect a sex offender's duty to register in the jurisdiction where he resides. (*Ibid.*)

In *Hester,* the defendant was convicted in 2006 of sexual abuse in New York, which obligated him to register as a sex offender under New York law, which he did in that year. However, a year later, Hester relocated to Florida where he was arrested on a warrant for violating his New York probation. Subsequently, Hester was indicted in federal court for violating 18 United States Code, section 2250, subdivision (a), for failing to register under SORNA. The defendant appealed from the federal conviction claiming SORNA did not apply to him because he had no actual notice of the registration requirement due to the fact New York had not implemented SORNA.

The circuit court of appeals disagreed, explaining that a jurisdiction's failure to fully implement SORNA did not relieve the defendant of the duty to register. (*United States v. Hester, supra*, 589 F.3d at p. 92.) The court observed that compliance with SORNA is not impossible in light of the fact that the states at issue had a registration program, although they had not implemented SORNA. (*Id.* at p. 93.)

The *Hester* court relied on several circuit court of appeals decisions. In *United States v. Brown* (11th Cir. 2009) 586 F.3d 1342, a similar claim was made that SORNA did not apply because Alabama had not implemented it. There, the reviewing court drew a distinction between a jurisdiction's duty to implement SORNA and a sex offender's

duty to register.  (*Brown,* at p. 1348, citing *United States v. Gould* (4th Cir. 2009) 568 F.3d 459, 464; see also *United States v. Hinckley* (10th Cir. 2008) 550 F.3d 926, 939 [defendant with Washington conviction not relieved from liability under federal law for failing to register in Oklahoma, which had not adopted SORNA, abrogated on another point in *Reynolds v. United States, supra,* 565 U.S. at p. ___ [132 S.Ct. 975, 980, 181 L.Ed.2d 935] [SORNA did not apply to pre-Act offenders charged with failing to register, until the Attorney General so specified].)

Therefore, SORNA's requirements to register and maintain registration are not expressly conditioned on a state's implementation of the Act.  (*United States v. Gould, supra,* 568 F.3d at p. 464.)  A jurisdiction's failure to implement SORNA results in a loss of federal funds, but is not an excuse for an offender who has failed to register; the requirement imposed on individuals to register is independent of the requirement imposed on the states to implement the enhanced registration and notification standards of SORNA.  (*Id.* at p. 465.)

The fact that California has not fully implemented SORNA does not mean that father was not required to register under the Adam Walsh Act/SORNA, because SORNA simply requires that sex offenders register in each jurisdiction where the offender resides, is employed, or is a student.  (42 U.S.C. § 16913, subd. (a).)  For purposes of Welfare and Institutions Code section 361.5, subdivision (b)(16), it is irrelevant that California has not

13

implemented the remaining provisions of the Act: he was and is required to register under the Act.

We recognize that the language of the statute contains an apparent typographical error. (See fn. 3.) However, the statute's reference to the Adam Walsh Act was intended to comply with CAPTA (42 U.S.C. § 5106a, subd. (b)(2)(B)) by bringing *all* parents or guardians who are required to register as sex offenders in *any* jurisdiction under the umbrella of the bypass provisions of section 361.5. Without reference to the Act, only parents convicted in California and required to register under Penal Code section 290 could be denied services. This would mean that a parent convicted in another state or jurisdiction of a sex offense, and required to register as a sex offender in that jurisdiction, would be eligible for reunification services for a child removed from parental custody in California. To avoid that anomalous situation, the Legislature included reference to the congressional Act, making it clear that any sex offender, from any jurisdiction, would be presumptively ineligible for reunification services.

As we have explained, any sex offender is required to register under the Act, because the SORNA registration provisions apply to any sex offender, even if the jurisdiction in which he or she was convicted has not adopted or substantially implemented it. The language of section 361.5, subdivision (b)(16), simply requires that any sex offender whose offense requires registration under the Act is presumptively ineligible for services. The section applies to father notwithstanding the fact that

14

California has not fully implemented the Adam Walsh Act because SORNA requires him to register as a sex offender in any jurisdiction.

## 2. Substantial Evidence Supports the Lower Court's Finding that Granting Reunification Services to Father Was Not in the Minor's Best Interest.

Father argues that no substantial evidence supports the finding that reunification services to him would not be in the minor's best interests. He cites to evidence in the record to support his claim, but does not cite any authority. We disagree with his contention.

Other than in cases of voluntary relinquishment, the general rule is that when a dependent child is removed from the parent's or guardian's physical custody, reunification services must be offered. (§ 361.5, subd. (a); *In re Ethan C.* (2012) 54 Cal.4th 610, 626.) Services need not be provided, however, when the court finds, by clear and convincing evidence, the existence of one or more specified circumstances. (*Ibid.*) These circumstances give rise to a "bypass" of services. (*In re A.M.* (2013) 217 Cal.App.4th 1067, 1074.) The series of circumstances listed under section 361.5, subdivision (b), reflect the Legislature's desire to provide services to parents only where those services will facilitate the return of children to parental custody. (*A.M.*, at p. 1074.) When the court determines a bypass provision applies, the general rule favoring reunification is replaced with a legislative presumption that reunification services would

15

be an unwise use of governmental resources. (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1112.)

However, even in the specified circumstances, the court may provide reunification services if it finds, by clear and convincing evidence, that reunification – not reunification services – is in the dependent child's best interests. (§ 361.5, subd. (c); *In re D.F.* (2009) 172 Cal.App.4th 538, 548.) A court called upon to determine whether reunification would be in the child's best interest may consider a parent's current efforts and fitness as well as the parent's history. (*In re Ethan N.* (2004) 122 Cal.App.4th 55, 66.) Additional factors for the juvenile court to consider when determining whether a child's best interest will be served by pursuing reunification include: the gravity of the problem that led to the dependency; the strength of the relative bonds between the child and both the parent and caretakers; and the child's need for stability and continuity, which is of paramount concern. (*Id.* at pp. 66-68; *D.F.,* at p. 547.) The burden is on the parent to show that reunification would serve the best interests of the child. (*In re A.G.* (2012) 207 Cal.App.4th 276, 281, citing *In re William B.* (2008) 163 Cal.App.4th 1220, 1227.)

We review an order denying reunification services by determining if substantial evidence supports it. (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914.) In doing so, we resolve all conflicts in the evidence in favor of the juvenile court's finding. (*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 600.)

16

Father cites efforts he has made on his own to improve his parenting ability, evidence of his relationship with the minor, and her desire to maintain a relationship with him, as evidence that reunification would be in her best interests. We acknowledge those matters. However, the determination that reunification would be in the minor's best interests is not simply a matter of whether a parent engages in parenting classes and counseling, or whether the child wants to live with him.

Father's testified that the sexual offense for which he was convicted was committed during a period of time when he had relapsed and was abusing methamphetamine. He did not know what triggered his relapse. Although he had participated in 10 therapy sessions, only three of them had addressed the sexual abuse case, and his therapist had not helped father gain insight as to why he may have committed the sexual abuse. The fact father did not know why he had relapsed with drugs caused the social worker to be concerned for his continued sobriety, since his drug use was a problem of longstanding. Given that he attributed his commission of the sex offense to his drug relapse, this was a reasonable concern.

In denying father services, the court cited the fact father had a substantial history of substance abuse since he was 13 years of age, and its concern that there are still unresolved issues regarding father's substance abuse because father did not know why he relapsed. The court also noted father's extensive criminal history, which included drug convictions and assault with a deadly weapon, in addition to his history of sexual abuse

17

which required him to be registered as a sex offender. The court mentioned the unsubstantiated allegations of sexual abuse involving the two other girls, who were 13 and 15 years of age, which raised concern because the minor was almost 13. Finally, the court cited the father's testimony that he had not yet acquired insight from counseling as to why he committed the 2010 sexual abuse that led to his conviction.

Whether or not the court improperly relied on the unsubstantiated allegations of sexual abuse relating to his former stepdaughter and her cousin does not compel a reversal. Disregarding that finding, there is still clear and convincing evidence to support the court's finding that it was not in the minor's best interests for father to receive services. His criminal record is substantial and his history of drug abuse is extensive. Further, he lacked insight into the factors contributing to his drug use, criminal activity, or sexual abuse. He had custody of the minor at the time he relapsed in 2010 and left the minor for two weeks during the period in which he committed the sexual abuse.

Father did not carry his burden of showing by clear and convincing evidence that reunification would be in the minor's best interests. (§ 361.5, subd. (c).) Under such circumstances, it was reasonable to conclude that reunification services should be denied pursuant to section 361.5, subdivision (b)(16).

DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

RAMIREZ _____

18

P. J.

We concur:

HOLLENHORST
                         J.

CODRINGTON
                         J.