Filed 6/26/14  In re Christian T. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re CHRISTIAN T. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B253250 (Super. Ct. Nos. J066537, J068260) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TERESA T.,<br><br>    Defendant and Appellant. | |

Teresa T. (Mother) appeals the juvenile court's order denying her request for a court order requiring Ventura County Human Services Agency (HSA) to provide services that would reunify her with Christine T. and Jasmine T. — two of her six children.  Mother does not contest the jurisdictional findings of the juvenile court and concedes that two or more of the exceptions to the rule requiring reunification services apply to her.  Mother nevertheless contends that the juvenile court should have provided her reunification services because doing so is in the best interests of the children.  We affirm.

*FACTS AND PROCEDURAL HISTORY*

In 2000, Mother and her then boyfriend Patrick S. had a daughter, Patricia. In the fall of 2000, over a period of several weeks, Mother and Patrick S. brutally tortured and murdered 14-month-old Demetri, a developmentally disabled child, who had been temporarily entrusted to their care by his drug-addicted mother while she was in custody. Demetri died on October 22, 2000.

In October 2000, Mother gave birth to her second child Patrick, who was taken into protective custody when the child tested positive for opiates. Reunification services for Mother were bypassed and her parental rights were terminated as to Patricia and Patrick.

Mother was arrested on charges related to the death of Demetri. She was convicted of voluntary manslaughter and mayhem and was sentenced to six years in prison. She was released on parole on March 7, 2006.

In March 2006, Mother met Father and became pregnant with Christian T. within the next few months. Christian was born in March 2007, and was immediately detained in protective custody.

In April 2007, the court sustained HSA's Welfare and Institutions Code section 300[1] petition finding Mother had an extensive drug history, gave birth to two drug-positive babies, had been convicted of voluntary manslaughter and mayhem in the death of Demetri and had not addressed her substance abuse issues. Based upon this history, the juvenile court found reunification was not in Christian's best interests and refused to order services for Mother.

In June 2008, Mother gave birth to her fourth child R., who was also detained in protective custody. Father was provided reunification services but they were bypassed as to Mother. Mother's and Father's parental rights were eventually terminated and R. was adopted.

---

[1] All statutory references are to the Welfare and Institutions Code.

In May 2008, Mother filed a petition with the juvenile court seeking reunification services with Christian. Her request was denied. The juvenile court noted the steps taken by Mother in prison and thereafter to reform her life but said, "The reason this case exists is because [M]other allowed a child in her care to be tortured and killed. She puts much blame for her behavior on the fact she was under the influence of heroin. But that is simply not a good enough explanation. The reasons why a person would allow such a thing to happen go much deeper than merely being under the influence of drug[s]. [¶] [I]t certainly will require more evidence of changed circumstances than [M]other has presented here before children can be considered safe in her custody."

Father reunified with Christian and in April 2009, Christian's first dependency was dismissed. Father was awarded sole legal and physical custody of Christian. Mother was permitted only supervised access to Christian and Father was not permitted to be the supervisor. Mother and Father disregarded the court orders issued to ensure Christian's safety. Three months after the orders were issued, Mother became pregnant with Jasmine. Father and Mother married, Jasmine was born in April 2010 and the parents continued to ignore the juvenile court orders by living together with both children.

In May 2011, Christian, three and Jasmine, one, became dependent children based upon Mother's history and because Father failed to protect them by refusing to regard Mother's substance abuse and criminal history as a threat to their safety.

In June 2011, the juvenile court sustained the petitions under section 300, subdivisions (b) and (f). Although HSA recommended that reunification services be bypassed as to both parents, the juvenile court determined that clear and convincing evidence showed that Mother then fit through the "'tiny crack'" available to a parent involved in the death of a child caused by the parent's abuse or neglect. (See *In re Ethan N.* (2004) 122 Cal.App.4th 55, 65.)

The juvenile court found that for "over 10 years, Mother has not engaged in any behavior that suggests she has returned to the person she was in October 2000." The court noted that although Mother and Father disregarded the court's custody and

visitation orders, there was no evidence Mother had ever harmed the children or that there was ever any domestic violence between them. "Jasmine and Christian have lived with mother and father most of their lives and they do have a close bond with their parents. The children's need for stability and continuity of care would be served by allowing these parents to attempt to reunify even though if they are not successful, permanency will be delayed." The court found this evidence proved reunification was at that moment in the best interests of the children and ordered HSA to provide reunification services to the family. These findings and orders were not appealed.

Father and Mother participated in the reunification services offered by HSA and the dependency case was dismissed in May 2012. Mother and Father were awarded joint legal and physical custody of Christian and Jasmine.

Five months after the juvenile court found Mother was well enough to warrant the rare finding that a person involved in the non-accidental death of a child in her care, Mother began a relationship with Randy O. Randy began using drugs when he was 19 and used methamphetamine and marijuana off and on until he was 28. He resumed the use of drugs after Mother became pregnant with his child in about November 2011.

In August 2012, Mother gave birth to T. O., who tested positive for methamphetamine and opiates. T.'s positive drug tests show that Mother's substance abuse problems either continued or resumed even while reunification services were being provided to her. In October 2012, Mother was arrested for being under the influence of amphetamine and opiates and tested positive for these drugs. When Mother was arrested, T. and Jasmine were at the home as were two men with outstanding warrants for their arrest.

Christian and Jasmine were again taken into protective custody. In November 2012, the juvenile court sustained petitions and then dismissed them, awarding sole legal and physical custody to Father. Mother was allowed access to the children only if it was professionally supervised. It made clear to Father that Mother would need

4

to document her participation for at least a year in a credible substance abuse treatment program before any changes to the visitation order would be considered.

The parties do not dispute that Father and Mother again failed to comply with the court's orders. Only five months later, Father and Mother agreed to and signed a stipulation that allows Mother unsupervised access to the children. The family court simply adopted the stipulation and made it the order of the court without a hearing. Mother refused to document her participation in any program despite requests from emergency response workers and court workers. In July 2013, Mother became homeless and Father allowed her to move in with him.

On or about August 14, 2013, Christian and Jasmine were again detained as dependents of the juvenile court. HSA's October 31, 2013 Juvenile Dependency Petition alleges that the children come within the jurisdiction of the juvenile court under the provisions of section 300, subdivisions (b), (f) and (j). The jurisdictional issue was litigated but is not challenged on this appeal. The parties agree that several "bypass provisions" found in section 361.5, subdivision (b)(4) apply to Mother and warrant an order denying her reunification services unless she proved by clear and convincing evidence that reunification is in the best interests of the children.

The issues raised by the HSA pleadings were tried in November 2013. The juvenile court received oral and documentary evidence. It concluded Mother failed to show that reunification was in the best interests of the children and refused to order services. As to Father however, the juvenile court found that reunification was in the best interests of the children and ordered HSA to provide services. The order as to Father is not challenged on this appeal.

### DISCUSSION

The general rule is that reunification services must be offered when a dependent child is removed from the physical custody of a parent or guardian. (§ 361.5, subd. (a); *In re Ethan C.* (2012) 54 Cal.4th 610, 626.) Services need not be provided, however, when the court finds based upon clear and convincing evidence that one or more of the circumstances listed in section 361.5, subdivision (b) exists. (*Ibid.*) These

5

circumstances permit the juvenile court to "bypass" services. (*In re A.M.* (2013) 217 Cal.App.4th 1067, 1074.) The listed circumstances reflect the Legislature's intention to provide services to parents only where those services will facilitate the return of a child to parental custody. (*Ibid.*) If a bypass provision applies, a presumption arises that reunification services would be an unwise use of governmental resources. (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1112.)

Nevertheless, even when bypass circumstances exist, the juvenile court may provide reunification services if it finds, by clear and convincing evidence, that reunification — not reunification services — is in the dependent child's best interests. (§ 361.5, subd. (c); *In re D.F.* (2009) 172 Cal.App.4th 538, 548.) In determining whether reunification is in the child's best interest, the court may consider whether the parent has made an effort to reform, how genuine that effort has been, as well as the parent's overall parenting fitness and personal history. (*In re Ethan N.*, *supra*, 122 Cal.App.4th at p. 66.) Additional factors for the juvenile court to consider when determining whether a child's best interests will be served by reunification include: the gravity of the problem that led to the dependency; the strength of the relative bonds between the child and both the parent and caretakers; and the child's need for stability and continuity. (*Id.* at pp. 66-68; *In re D.F.* at p. 547.) The burden is on the parent to show that reunification serves the best interests of the child. (*In re A.G.* (2012) 207 Cal.App.4th 276, 281, citing *In re William B.* (2008) 163 Cal.App.4th 1220, 1227.)

An order denying reunification services is reviewed to determine if substantial evidence supports the order. (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914.) "In doing so, all conflicts in the evidence are resolved in favor of the juvenile court's finding. (*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 600.)" (*In re S.B.* (2013) 222 Cal.App.4th 612, 622.)

Mother argues "clear and convincing evidence established that it was in [the children's] best interests that she be provided with reunification services." Her argument misses the point and misstates her burden in the trial court and on appeal. Properly stated, the juvenile court must find from clear and convincing evidence that

6

reunification is in the best interests of the children *before* reunification services are considered. Until this foundational element is proved, a discussion of whether Mother and the children might benefit from reunification services is not germane.

Here, the juvenile court's thorough and thoughtful ruling identified a variety of specific risks that decidedly support the conclusion that reunification is not in the best interests of these children. They include: (1) Mother's participation in the brutal torture and murder of a helpless 14-month-old developmentally disabled child; (2) Mother's conviction of a violent felony that relates specifically to neglect and abuse of a child; (3) Mother's chronic, severe history of untreated or ineffectively treated drug and alcohol abuse; (4) Mother's willingness to expose T. when she was in utero to the risk of severe injury, disability or death by using methamphetamine and opiates for her personal satisfaction; (5) Mother's unwillingness to protect the children from the presence of drugs, addicts and drug dealers; (6) the termination of Mother's parental rights to three of her six children; (7) Mother's intentional violation of the juvenile court's exit orders that were designed to protect Christian and Jasmine; (8) exposing the children to persons with a history of criminal activity and outstanding arrest warrants; and (9) the compelling interest these children have in being part of a stable family and not to be subjected to yet another round of dependency proceedings and treatment plans.

Mother relies heavily on the juvenile court's findings and order in May 2012 that reunification was in the children's best interests in spite of her history. She says this shows her redemption was complete and evidences her metamorphosis from a "troubled young woman" to a "competent, loving mother." This order, Mother argues, makes the brutality in 2000 the work of a different person and no longer relevant to an assessment of the best interests of Christian and Jasmine. First, it is doubtful that either the juvenile court or the family court would have made the orders they did in 2012 if they knew Mother was using methamphetamine and opiates while HSA services were being delivered to her and while she was pregnant. Second, changed circumstances warrant reconsideration of the orders even if they were then in the best interests of these children.

7

The record supports the juvenile court's conclusion that Mother made nothing more than minimal progress toward mitigating the serious issues that affect her ability to parent the children. We agree with the court that Mother did not carry her burden of showing by clear and convincing evidence that reunification was in the children's best interests.

The judgment is affirmed.

NOT TO BE PUBLISHED.

BURKE, J.[*]

We concur:

GILBERT, P. J.

PERREN, J.

---

[*] (Judge of the Superior Court of San Luis Obispo County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

8

Tari L. Cody, Bruce A. Young, Judges

Superior Court County of Ventura

_____

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant.

Leroy Smith, County Counsel, County of Ventura, Alison L. Harris, Assistant County Counsel for Petitioner and Respondent.