Filed 1/15/26  B.E. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| B.E., | |
| Petitioner, | E087024 |
| v. | (Super.Ct.No. RIJ118486) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petitions for extraordinary writs.  Malvina K. Ovanezova, Temporary Judge.  (Pursuant to Cal. Const., art VI, §21.)  Petition denied.

Kathleen M. Peach for Petitioner B.E.

No appearance for Respondent.

1

Minh C. Tran, County Counsel, Jamila T. Purnell and Larisa R-McKenna, Deputy County Counsel, for Real Party in Interest

B.E. (mother) petitioned for an extraordinary writ after the juvenile court bypassed family reunification services.[1]  Mother disputes the court's finding that she failed to make reasonable efforts to resolve the problems that led to her first child's removal and argues the court did not properly consider the children's best interests.  We deny the petition.

BACKGROUND

Mother was born in 1992.  Sometime before June 2009 she gave birth to her first child.  Mother was a dependent minor at the time.  In June 2009 the Riverside County Department of Public Social Services (the department) received a referral alleging domestic violence between mother and the father of her first child, and that mother generally neglected the child.  The department eventually filed a petition under section 300 alleging mother had issues with substance abuse and domestic violence.  These allegations were found true, and the child was detained.  In November 2010, the court terminated mother's reunification services.  In October 2011—when mother was over 18 years old—the court terminated her parental rights and allowed the child's paternal grandparents to adopt.

This dependency concerns mother's two youngest children:  L.E. (born 2013) and M.G. (born 2018).  L.E.'s biological father was not a presence in her life.

---

[1]  Unlabeled statutory citations refer to the Welfare and Institutions Code.

In 2013 the department received a referral alleging L.E. tested positive for methamphetamine at birth. The department followed up on this referral multiple times, and continued to receive new referrals over the next two years. Finally in December 2014 the department received a report that mother was struggling with substance abuse and housing, and that L.E. had been in maternal aunt's care since October 2013. The maternal aunt received temporary guardianship. L.E. eventually returned to mother's custody, but "[t]he record is silent as to how she ended back with mother."

When L.E. was about four years old, mother began dating M.G.'s father, R.G. L.E. viewed him as her father. When L.E. was nine years old mother and R.G. separated. L.E. continued living full-time with R.G., in part so she could stay in her school. She and mother usually visited every weekend, but between February 14 and May 1, 2025, mother did not see L.E. at all.

In 2024, when L.E. was 11 or 12 years old, R.G. began dating other women. This upset L.E., who wanted mother and R.G. to get back together. According to L.E. she asked R.G. to stop dating other women, but he said he "had needs." L.E. then proposed that she would have intercourse with R.G. She and R.G. had intercourse inconsistently throughout 2024.

At some point L.E. became pregnant, and attempted to hide it from R.G. and mother. L.E. gave birth in April 2025, and the department received an immediate response referral. Though L.E. initially denied knowing who the father of her child was,

3

she eventually told the department it was R.G.  R.G. admitted to police that he raped L.E. and told them he was sure he was the father of L.E.'s child.

Mother denied knowing L.E. was pregnant and denied knowing anything about R.G. raping L.E., but admitted that she had not seen L.E. for several months.  Mother said she found out that L.E. was pregnant two days after she gave birth.  However, she also admitted that "a few months prior" M.G. sent mother a photo of L.E. topless in bed with R.G.  Mother said both L.E. and R.G. assured her "nothing inappropriate was occurring between them."

Mother denied that she had any mental health issues.  Mother also initially denied any substance abuse issues and agreed to an on-demand drug test.  That test was positive for fentanyl, as was a second test.  After the second test was positive for fentanyl, mother admitted that she was "a functioning addict" and "had a hard time getting clean."  She admitted to using three or four days prior to the test.

The department filed a petition under section 300, subdivisions (b), (d), (g) and (j) on May 7, 2025.  The petition alleged mother knew or should have known about R.G.'s sexual abuse of L.E., that she failed to protect L.E., that there was a substantial risk that M.G. would also be abused while in mother's care, and that mother had substance abuse issues.

The department interviewed mother again on May 22, 2025.  During the interview, mother admitted she "relapsed" and was currently using fentanyl.  She said she had last used on May 17 and May 19.  She also refused to sign releases that were necessary for

4

service referrals, telling the department she would seek services on her own. Mother was already participating in individual therapy.

In June 2025, mother informed the department she was enrolled in online parenting classes, but the department told her the course was not approved, in part because it was not in-person. On June 23, 2025, mother enrolled in outpatient substance abuse treatment. On July 2, 2025 mother tested positive for methadone and said she was receiving methadone treatment.

In July 2025 the children's maternal aunt and then current caregiver wrote a letter to the court expressing that she and the children wanted reunification with mother. She said the children "have both expressed they 100% want to be reunited with their mother," and wanted her to have "another chance[] to be the mom they knew her to be for many years."

At the August 6, 2025 jurisdiction hearing, the court found all the allegations true—including that mother had failed to reunify with and had her parental rights terminated as to her first child—and set a contested disposition hearing.

On September 4, 2025, the department spoke to mother's detox program, which confirmed that mother last reliably tested positive for fentanyl on June 16, 2025, and tested negative for all substances on July 29, 2025. Mother seemed to be participating in services, which included substance abuse treatment, individual therapy, and parenting education.

The court held the contested disposition hearing in September 2025. The department recommended terminating reunification services to mother under section 361.5 subdivisions (b)(6) and (b)(11). The court ultimately concluded the evidence was thin for bypassing reunification services under section 361.5, subdivision (b)(6), but that mother's prior failure to reunify and ongoing substance abuse issues justified bypassing reunification services under subdivision (b)(11). Accordingly, the court denied mother reunification services under section 361.5 subdivision (b)(11) and set a section 366.26 hearing for January 2026.

DISCUSSION

Mother argues the trial court erred by bypassing reunification services. Specifically, mother argues there is no substantial evidence supporting the court's finding that she failed to make a "reasonable effort to treat the problems that led to removal," (§ 361.5, subd. (b)(11)) of the children's older sibling and that the court abused its discretion by not considering whether bypassing services were in the children's best interests.

"Ordinarily, when a child is removed from parental custody, the juvenile court must order services to facilitate the reunification of the family. [Citation.] ' "Nevertheless, as evidenced by section 361.5, subdivision (b), the Legislature recognizes that it may be fruitless to provide reunification services under certain circumstances. [Citation.] Once it is determined one of the situations outlined in subdivision (b) applies, the general rule favoring reunification is replaced by a legislative

6

assumption that offering services would be an unwise use of governmental resources." ' "
(*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914 (*R.T.*).)

"Section 361.5, subdivision[s] (b)(10) and [(b)](11), authorize the denial of services to a parent who has failed to reunify with another child or whose parental rights to another child were terminated if the court finds that the parent 'has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling . . . .' " (*R.T.*, *supra*, 202 Cal.App.4th at p. 914.)  Thus, these subdivisions have "two prongs or requirements:  (1) the parent previously failed to reunify with a sibling of the child; *and* (2) the parent failed to make reasonable efforts to correct the problem that led to the sibling being removed from the parent's custody." (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96 (*Cheryl P.*).)  "[T]he 'reasonable effort to treat' standard . . . is not synonymous with 'cure.' " (*Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1464.)  "If the evidence suggests that despite a parent's substantial history of misconduct with prior children, there is a reasonable basis to conclude that the relationship with the current child could be saved, the courts should always attempt to do so." (*Ibid.*)

However "[w]e do not read the 'reasonable effort' language in the bypass provisions to mean that *any* effort by a parent . . . will constitute a reasonable effort."
(*R.T. v. Superior Court*, *supra*, 202 Cal.App.4th at p. 914.)  "It is certainly appropriate for the juvenile court to consider the *duration*, *extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when

evaluating the effort for reasonableness. And while the degree of progress is not the *focus* of the inquiry, a parent's progress . . . may be considered to the extent it bears on the *reasonableness* of the effort made." (*Ibid.*)

"A court reviews an order denying reunification services under section 361.5, subdivision (b) for substantial evidence." (*Cheryl P.*, *supra*, 139 Cal.App.4th at p. 96.) " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]." ' [Citations.] " ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Here, we conclude there was substantial evidence to support the court's decision to bypass reunification services. Mother had her parental rights to her first child terminated in part because of her drug use and in part due to general neglect. Thereafter, in 2013, she continued to have similar problems with L.E., who tested positive for

methamphetamine upon birth. While the record contains no details of mother's efforts to get and remain clean after that, there was sufficient evidence that she did not do enough to treat the problem. Mother admitted to the department that she was a "functioning addict," that she used fentanyl three or four days before the department first contacted her in person, and that she was using during the course of this dependency. Mother appears to be sober now, but the evidence of her continued struggles with drug use was sufficient to allow the trial court to conclude this was too little, too late. Her neglect continued through her daughter's 2025 pregnancy. Accordingly, we conclude there was sufficient evidence to allow the court to bypass reunification services under section 361.5, subdivision (b)(11).

We also conclude the court did not abuse its discretion by determining that reunification services were not in the best interests of the children.

Section 361.5, subdivision (c)(2) states "[t]he court shall not order reunification for a parent or guardian described in paragraph . . . (11) . . . of subdivision (b) unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." As noted above, "[w]hen the court determines a bypass provision applies, the general rule favoring reunification is replaced with a legislative presumption that reunification services would be an unwise use of governmental resources." (*In re S.B.* (2013) 222 Cal.App.4th 612, 622.) Therefore "[t]he burden is on the parent to show that reunification would serve the best interests of the child." (*Id.* at p. 623.) "A court called upon to determine whether reunification would be in the child's best interest may

9

consider a parent's current efforts and fitness as well as the parent's history. [Citation.] Additional factors for the juvenile court to consider when determining whether a child's best interest will be served by pursuing reunification include[:] the gravity of the problem that led to the dependency; the strength of the relative bonds between the child and both the parent and caretakers; and the child's need for stability and continuity, which is of paramount concern." (*Id.* at pp. 622-623.)

"We review the juvenile court's findings for substantial evidence, and the juvenile court's decision[-]making process based on those findings for abuse of discretion." (*San Joaquin Human Services Agency v. Superior Court* (2014) 227 Cal.App.4th 215, 223.) "The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion." (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474.)[2]

The court did not abuse its discretion by denying mother reunification services. It was mother's burden to convince the court to do otherwise. In arguing she met that burden, mother points to the children's wishes, as communicated by the maternal aunt's

---

[2] In her petition mother argues the court should have considered the factors outlined in section 361.5, subdivision (h). However, it appears mother intended to reference section 361.5, subdivision (i). Regardless, neither applies here. Subdivision (h) is not relevant in this case, and subdivision (i) only applies when the court is contemplating bypassing reunification services under subdivisions (b)(6) or (b)(7). Though the department recommended bypassing reunification services under subdivision (b)(6), the court ultimately bypassed reunification services under subdivision (b)(11). Therefore, the court did not need to consider the factors outlined in section 361.5, subdivision (i).

July letter expressing their desire to be reunified. However, a child's bond with their parent cannot be the sole basis for finding that further services would be in their interest. (*In re William B.* (2008) 163 Cal.App.4th 1220, 1229.) On the other hand, there was affirmative evidence that reunification would not be in the children's best interests. The court was concerned about mother's failure to protect L.E. despite warning signs that she was being abused. In particular, the court said "the part I can't get over . . . [t]hat picture of [L.E.] sleeping in the bed with an unrelated adult, at least without a top, is rather concerning, and [mother] didn't do anything about it." The court's reasonable concern that mother was not sufficiently protective of L.E. or skeptical of R.G. is itself sufficient basis to believe that mother had not met her burden to demonstrate reunification would be in her children's best interests. The trial court therefore did not abuse its discretion in concluding that reunification would not be in the children's best interests.

DISPOSITION

We deny the petition for extraordinary writ.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL        <br>J.

We concur:

McKINSTER      
     Acting P. J.

MILLER       
     J.