[Nos. C057250, C057753. Third Dist. Feb. 20, 2009.]

In re D.F., a Person Coming Under the Juvenile Court Law.
SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN
SERVICES, Plaintiff and Respondent, v.
D.F., SR., Defendant and Appellant.

**COUNSEL**

Teri A. Kanefield, under appointment by the Court of Appeal, for Defendant and Appellant.

Robert A. Ryan, Jr., County Counsel, and Lilly C. Frawley, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**MORRISON, J.**[*]—Appellant, the father of the minor, appeals from orders made at a dispositional hearing followed by a rehearing at which he was denied reunification services. (Welf. & Inst. Code, §§ 252, 360, subd. (d), 395; further statutory references are to this code.) Appellant claims the juvenile court erred by denying him services. He also maintains the social services agency failed to adequately apprise the court of information concerning his deafness. Finding no merit to these claims, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2006, a petition was filed by the Sacramento County Department of Health and Human Services (the Department) concerning the nearly 12-year-old minor, alleging physical abuse by the minor's mother and her boyfriend, and physical and sexual abuse by appellant. The petition was later amended to add an allegation that the minor was at substantial risk of suffering serious emotional damage, in part as a result of sexual abuse perpetrated by appellant. Appellant, who is deaf, appeared with an American Sign Language interpreter throughout the proceedings. He denied he had abused the minor in any way.

The minor previously had been made a dependent of the juvenile court in 1995, soon after his birth, based on severe physical abuse of his older sibling by the parents. The following month, the parents separated as a result of a domestic violence incident allegedly perpetrated by appellant.

During the previous proceedings, it initially was reported by the foster care agency that appellant became angry and aggressive on occasion, but it eventually was determined that appellant's "assertive gestures and rapid movements in [American Sign Language]" possibly were being misinterpreted as aggressive or threatening.

In May 1997, the minor was reunified with appellant, who eventually was granted sole physical custody. However, appellant was not able to reunify with the minor's older sibling, who had been diagnosed with "mental retardation and mild cerebral palsy," and appellant's parental rights as to that child were terminated.

Numerous referrals were received by the Department in the ensuing years concerning abuse or neglect of the minor by his mother or appellant.

---

[*]Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

According to the mother, she received full custody of the minor in 2003 following a family court hearing, after which the minor told her that appellant had beat him every day and had committed additional acts of sexual abuse. In 2006, the minor made further disclosures of sexual abuse by appellant after an incident in which appellant tried to remove the minor from the mother's property, and the family court visitation order was changed to require supervision by a licensed therapist.

The minor had been diagnosed with posttraumatic stress disorder, and exhibited temper tantrums, anxiety, fighting and aggression with his peers, enuresis and encopresis, and frequent nightmares involving appellant. Numerous professionals had observed that the minor had "severe behavioral problems due to his history of abuse and neglect in his family of origin."

At the jurisdictional hearing in the present proceedings, which was completed in January 2007, the juvenile court dismissed the allegations of sexual abuse against appellant but concluded the minor was "seriously disturbed" and that it appeared this was the result of what had occurred while he lived with appellant. Accordingly, the court sustained allegations that appellant had physically abused the minor between 1999 and 2003, that the minor had suffered severe emotional damage, and that the mother was not able to properly care for the minor due to his severe emotional disturbances.

The dispositional hearing was continued numerous times and was not completed until July 2007. In the meantime, the minor's two half siblings and two stepsiblings were placed in protective custody in March 2007 after it was discovered that the stepsiblings—ages four and seven—had bruising on various parts of their bodies, and the seven year old reported appellant had hit and kicked her. In addition, it had been reported that appellant had been uncooperative, confrontational and intimidating with the visit supervisor during a visit with the minor, and he was no longer allowed to have visits at the minor's placement. Nonetheless, following testimony at the dispositional hearing, the juvenile court ordered reunification services for appellant, while denying services for the mother. The court set a review hearing for the following month.

Pursuant to section 252, the Department requested a rehearing on whether appellant should be granted reunification services, which was granted.

At the review hearing, which took place while the rehearing was pending, the juvenile court adopted the social worker's recommendations and set the matter for a subsequent review hearing. Appellant filed a notice of appeal. Meanwhile, the minor was placed in the care of a woman with whom the mother had been placed when she was a minor, whom the minor considered his grandmother.

The rehearing of the dispositional hearing occurred in October and November 2007. The social worker testified that she did not believe appellant had taken responsibility for physically abusing the minor or the minor's siblings, as he had not admitted the abuse in either counseling or anger management sessions. The social worker also felt that appellant's communications with her sometimes exhibited anger and aggressiveness. When questioned by the court about this assessment, the social worker had difficulty giving examples but testified she could "feel" appellant's anger in his e-mails and based on his mannerisms and gestures.

Appellant's therapist testified that appellant was receptive to her suggestions as to how to improve visits with the minor and that she had "observed a growth and change in [him] as the visits progressed." The therapist explained that there were some communication difficulties between appellant and her due to his deafness, but her training allowed her to recognize when this was occurring and to respond. She testified that appellant also had been "very receptive" to anger management treatment, had made progress in this area, and no longer had an anger control problem. Although appellant continued to deny he physically abused the minor or his other children, the therapist did not feel this constituted a lack of progress because appellant was "so willing to explore . . . every aspect of his behavior and his philosophy and his moral judgment." The therapist explained that appellant and she talked about the abuse allegations, and because his answers were consistent, she took his word that he had not caused the injuries. She acknowledged that she did not attempt to ascertain what the court records established with regard to the abuse.

Similarly, a psychotherapist who treated appellant as well as the service provider for his parenting class testified as to appellant's positive participation. However, the psychotherapist had not addressed the physical abuse perpetrated by appellant because she was not aware that any allegations in this regard had been sustained against him. She was also unaware that appellant had reported he had been physically and sexually abused as a child, and appellant reported otherwise to her.

The psychotherapist also testified that appellant's "strong gestures" were not alarming to her because "almost all clients [that she worked with from the deaf community] are very emphatic with their hand motions and their emotions." For the same reason, the sounds that appellant made when communicating did not alarm her because she knew that members of the deaf community were "not aware of how loud they are."

Appellant testified that he had never abused any of his children but he was willing to cooperate with the Department if he was offered reunification services.

Following testimony, the court concluded the Department had established that section 361.5, subdivision (b)(3) (the minor or a sibling was previously removed due to physical or sexual abuse and the minor has been removed again as a result of physical or sexual abuse) and (b)(11) (failure to reunify with a sibling and the parent has not made a reasonable effort to treat the problem that led to removal of the sibling) applied as bases for denying appellant services.

The court also concluded appellant had failed to establish services would be in the minor's best interests under section 361.5, subdivision (c). The court noted there was no evidence that appellant had been aggressive or violent in the social worker's presence, and that it was "very likely a misunderstanding on his gesturing to speak with sign language to think that he is being aggressive when he moves his arms about quickly and makes sounds . . . ." However, the court found that the circumstances regarding how the abuse occurred, the severity of the emotional trauma suffered by the minor, the fact that appellant had abused other siblings, and the apparent desire of the minor to remain in his current placement and have reduced contact with appellant all dictated against pursuing reunification. The court noted that, despite many years of services, appellant had not admitted any abuse of his children and was "adamant and resistent [sic] toward acknowledging that he has conduct that needs change. . . ." The court rejected the conclusions of the therapists regarding appellant's progress, finding their testimony exhibited a lack of neutrality.

## DISCUSSION

## I

Appellant argues he was improperly denied services pursuant to section 361.5, subdivision (b)(3). He is incorrect.

Section 361.5, subdivision (b)(3), provides that a parent need not be provided reunification services if the court finds clear and convincing evidence that "the child or a sibling of the child has been previously adjudicated a dependent pursuant to any subdivision of Section 300 as a result of physical or sexual abuse, that following that adjudication the child had been removed from the custody of his or her parent or guardian pursuant to Section 361, that the child has been returned to the custody of the parent or guardian from whom the child had been taken originally, and that the child is being removed pursuant to Section 361, due to additional physical or sexual abuse."

Here, the minor was removed in the prior dependency proceeding based on severe physical abuse of his sibling by appellant and the mother. The minor's

most recent removal was based, in part, on physical abuse by appellant. In addition, evidence supports the conclusion that the minor was removed from appellant's custody in 2003 based on his abuse of the minor.

Appellant maintains that section 361.5, subdivision (b)(3), is inapplicable because it was not the minor who was physically abused in the first dependency proceeding. According to appellant, the use of the word "additional" in the subdivision's requirement that the child's removal be due to additional physical or sexual abuse means that the child must have been subject to previous abuse. However, the express language of the subdivision requires a prior removal of the child following a dependency adjudication of the child *or the child's sibling* as a result of physical or sexual abuse. Contrary to appellant's assertion, the subdivision specifies that the victim of the previous abuse may be the child or a sibling of the child.

Appellant argues the subdivision is "unwieldy" because it could be interpreted to include prior dependency adjudications in which the physical or sexual abuse of other individuals resulted in a risk of danger to the child. We have no cause to address this hypothetical situation, as the facts before us involve the prior physical abuse of a sibling, a circumstance expressly encompassed by the statute.

■ Appellant also notes that in *Deborah S. v. Superior Court* (1996) 43 Cal.App.4th 741, 751 [50 Cal.Rptr.2d 858], the appellate court summarized section 361.5, subdivision (b)(3), as providing that a parent can be denied services if "the minor has been removed a second time in the course of the *same dependency* on account of physical or sexual abuse." (Italics added.) However, this statement is dicta, as the court in *Deborah S.* was not called upon to resolve any issues regarding the denial of services under subdivision (b)(3). There is nothing in the language of the subdivision to suggest its provisions are limited to multiple removals in the same proceeding, and we decline to follow *Deborah S.* to the extent it states otherwise.

■ Finally, appellant claims subdivision (b)(3) of section 361.5 does not apply because the minor's most recent removal was from the custody of the mother. The parties debate at length whether, for purposes of the subdivision, the minor was removed from appellant's custody in the second proceeding. However, while subdivision (b)(3) requires that the minor was "removed from the custody of his or her parent" in the first proceeding and, thereafter, returned to the parent's custody from whom he or she was originally removed, it does not specify that the second removal must be from the

custody of that parent. The subdivision requires only "that the child is being removed pursuant to Section 361, due to additional physical or sexual abuse."[1]

Accordingly, we conclude the juvenile court did not err in denying appellant reunification services under section 361.5, subdivision (b)(3). As we conclude the juvenile court properly denied appellant services under this subdivision, it is unnecessary for us to address the other ground relied on by the juvenile court for denial of services. (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875 [7 Cal.Rptr.2d 277] ["reviewing court may affirm a juvenile court judgment if the evidence supports the decision on any one of several grounds"].)

II

Appellant next asserts that, even if the juvenile court properly applied section 361.5, subdivision (b), it abused its discretion under subdivision (c) of that section by not ordering reunification services for him. Again, we disagree.

Section 361.5, subdivision (b), enumerates circumstances under which the juvenile court "need not" provide reunification services to a parent. Subdivision (c) of that section provides, in part, that if the parent falls within certain paragraphs of subdivision (b), including subdivision (b)(3), "[t]he court shall not order reunification for [that parent] . . . unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child."

"Once it is determined one of the situations outlined in [section 361.5,] subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources." (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478 [73 Cal.Rptr.2d 793].) It is in this context that the juvenile court may consider

---

[1] The Department discusses at length the application of section 361.2, subdivision (a), which requires placement with a noncustodial parent who requests custody "unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." As appellant has limited his argument to whether the minor was removed for purposes of section 361.5, subdivision (b)(3), and does not address the applicability of section 361.2, subdivision (a), we need not address this issue. Nonetheless, we note *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 54 [81 Cal.Rptr.3d 918], recently held that, when a noncustodial parent is not given custody pursuant to section 361.2, "section 361.5 governs the grant or denial of reunification services." Thus, even assuming appellant was a noncustodial parent, once it was determined he would not be given immediate custody of the minor, section 361.5 applied in determining whether reunification services should be offered to him.

whether, despite the application of a basis for denying reunification services, the minor's best interest dictates that services be offered.

■ The purpose of imposing a "best interest of the child" standard " 'is to maximize a child's opportunity to develop into a stable, well-adjusted adult.' " (*In re Ethan N.* (2004) 122 Cal.App.4th 55, 66 [18 Cal.Rptr.3d 504].) Appropriate factors for the juvenile court to consider when determining whether a child's best interest will be served by pursuing reunification include: (1) the "parent's current efforts and fitness as well as the parent's history"; (2) "[t]he gravity of the problem that led to the dependency"; (3) "[t]he 'strength of relative bonds between' the dependent child and '*both* parent and caretakers' "; and, "[o]f paramount concern," (4) "the child's need for stability and continuity." (*Id.* at pp. 66–67.)

■ As recognized by the juvenile court, here, the evidence raised little prospect for appellant's successful reunification with the minor. The court considered the fact that, despite years of services, appellant had not admitted to any abuse of his children and did not acknowledge any need to change, despite evidence of three different periods of abuse involving several children. In concluding that the minor's best interests would not be served by pursuing reunification, the court considered the circumstances surrounding the abuse, the severity of the minor's emotional trauma, and the minor's desire to remain with his current caretaker and to reduce contact with appellant—all appropriate factors.

The tradeoff for attempting reunification with appellant would be continued instability and uncertainty for the minor. Under the circumstances, the juvenile court did not err in finding a lack of clear and convincing evidence that reunification services would be in the minor's best interest.

Appellant does not point to anything in the record that would lead to a different conclusion. Instead, he claims the juvenile court's reliance on his failure to acknowledge his parenting problems was improper because it "disregard[s] that [his] severe physical limitations with language would have made it impossible for him to understand the need to make such an admission without professional assistance." We fail to comprehend how appellant's hearing impairment rendered him incapable of understanding that physically abusing his children was inappropriate. Furthermore, appellant had an abundance of professional support to assist him in coming to terms with his prior conduct, as evidenced by the service providers who testified at the hearing.

Appellant also argues that, as the minor was placed with "his maternal grandmother,"[2] appellant would continue to have a relationship with him and, thus, the minor would benefit if appellant was provided services even if reunification did not occur. To the contrary, according to a report in September 2007, appellant harbored hostility toward the minor's caretaker, who had requested that he not come to her home. Thus, placement with this particular caretaker did not increase the likelihood that appellant would continue to have a relationship with the minor.

■ In any event, before ordering services for a parent described by section 361.5, subdivision (b)(3), the court must find that "reunification"—not reunification services—is in the minor's best interests. The court did not find so here, and its finding in this regard did not evince an abuse of discretion.

### III

Appellant's final claim is that the Department failed to carry out its duty to apprise the juvenile court "of the implications of [his] deafness." He contends the court might have reached a different conclusion with regard to providing him reunification services had it been informed "that the deaf—and this father in particular—are likely to be misunderstood even by trained department professionals." Specifically, he claims the Department was obligated to inform the court about his experience in the prior dependency proceeding of being misperceived as aggressive and unresponsive to services. There is no merit to this claim.

At the rehearing on disposition, the juvenile court rejected the social worker's testimony that appellant had been violent or aggressive in her presence, noting that the social worker's perception in this regard was "very likely a misunderstanding on his gesturing to speak with sign language." The court's finding in this regard reflects its awareness that appellant's demeanor could be misunderstood at times as a result of his deafness.

The juvenile court's determination regarding services was based on appellant's "resist[ance] toward acknowledging that he has conduct that needs change." Nothing in the record suggests that the court harbored any misperceptions concerning appellant's demeanor. Accordingly, we reject this claim.

---

[2] As previously explained, the caretaker was not the minor's grandmother but had been the mother's caretaker when she was 16.

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Cantil-Sakauye, J., concurred.