Filed 7/24/14  In re T. O. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re T. O., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B254462 (Super. Ct. No. J069077) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RANDY O. et al.,<br><br>    Defendants and Appellants. | |

Randy O. and Teresa T., the parents of T. O., appeal from the juvenile court's order denying mother's petition for modification and terminating their parental rights.  (Welf. & Inst. Code, §§ 388, 366.26.)[1]  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

In 2000, mother and her then boyfriend Patrick S. had a daughter, Patricia, and were expecting the birth of their son, Patrick, Jr.  In the fall of 2000 the heroin-addicted mother of 14-month-old Ion R. temporarily entrusted the infant to the

---

[1] All statutory references are to the Welfare and Institutions Code.

care of mother and Patrick S. Over a period of several weeks, mother and Patrick S. brutally tortured the infant. Ion died on October 22, 2000 from the resulting injuries.

In October 2000, mother gave birth to Patrick, Jr., her second child. The baby was detained when he tested positive for opiates. Reunification services for mother and Patrick S. were bypassed, their parental rights were terminated and the adoption of Patricia and Patrick, Jr., was finalized in August 2003.

Mother was arrested and charged with torturing and murdering Ion. She initially refused to disclose to law enforcement the whereabouts of Patrick S. and Patricia. Eventually, mother agreed to cooperate, Patrick S. was arrested and Patricia was taken into protective custody. Mother was convicted of voluntary manslaughter and mayhem and sentenced to six years in prison. Mother was released on parole in March 2006. She met Romero T. and within a few months became pregnant with Christian. Christian, mother's third child, was born in March 2007 and was detained in protective custody because of mother's history of chronic drug abuse and her role in the torture-murder of Ion R.

In April 2007, the court sustained Ventura County Human Services Agency's (HSA) section 300 petition, found reunification was not in Christian's best interests and refused to order reunification services for mother. Custody of Christian was awarded to Romero with supervised visitation for mother.

In June 2008, mother gave birth to her fourth child R., who was also detained in protective custody. Romero was provided reunification services but services were bypassed as to mother. Romero failed HSA's reunification plan and both parents' parental rights were terminated. R. was adopted in March 2010.

In May 2008, mother petitioned the juvenile court to modify its 2007 order denying family reunification services to her for Christian. Her request was denied. Romero, however, was reunified with Christian and he was awarded sole legal and physical custody. Although mother's access to Christian was required to be supervised by someone other than Romero, mother, Romero and Christian lived together. Three

2

months after the orders were issued, mother became pregnant with her fifth child, Jasmine. Romero and mother married. Jasmine was born in April 2010.

In May 2011, Christian and Jasmine became dependent children based upon mother's history and because Romero failed to protect them by refusing to regard mother's substance abuse and criminal history as a threat to their safety. Although HSA recommended that reunification services be bypassed as to both parents, the juvenile court determined that clear and convincing evidence showed that mother then fit through the "tiny crack" available to a parent involved in the death of a child that was caused by the parent's abuse or neglect. (See *In re Ethan N.* (2004) 122 Cal.App.4th 55, 65.) The court found that this evidence, at that moment, was enough to show reunification was in the best interests of the children and ordered HSA to provide reunification services to the family.

Five months after the juvenile court found mother was well enough to warrant the rare finding that a person involved in the non-accidental death of a child in her care, mother began a relationship with Randy O. (father). Father has a long history of using methamphetamine and other drugs and multiple convictions for drug-related crimes, domestic violence, fraud and theft. Mother became pregnant with T. O. but neither parent discontinued their use of drugs during mother's pregnancy. T. was born in 2012 and tested positive for methamphetamine and opiates.

On October 10, 2012, T. was detained and placed in confidential foster care. At a detention hearing on October 15, 2012, the juvenile court ruled that HSA's showing was sufficient to continue T.'s placement with confidential foster parents. Later that month, mother was arrested again for being under the influence of a controlled substance.

At contested jurisdictional/dispositional hearings on November 29, 2012 and December 5, 2012, family reunification services were bypassed for mother but were offered to father. On April 19, 2013, T. was transferred to the care of her maternal aunt Valerie R. T. has lived with her aunt since then and is closely bonded to her.

At the six-month review hearing on September 11, 2013, the trial court terminated services for father based upon his history of chronic drug abuse and his inability to comply with the requirements of HSA's reunification plan. The court found father had not demonstrated an ability to provide support and care for his child. The matter was set for a contested permanent placement hearing on February 19, 2014. (§ 366.26.)

On January 29, 2014 and February 13, 2014, respectively, mother and father filed section 388 petitions requesting a hearing on whether the juvenile court's orders denying them family reunification services should be modified. The changed circumstances cited by mother were that (1) she had enrolled in an in-patient drug treatment program for the first time; (2) attended AA/NA meetings regularly; (3) she consistently visited T. one hour each week as permitted by the court; (4) her visits with T. were positive; and (5) a bond was developing between her and T. She also stated that she was interested in insuring T. had a positive sibling relationship with Christian and Jasmine. The changed circumstances cited by father were that he (1) was no longer in custody; (2) was enrolled in counseling and a drug treatment program; (3) took a parenting class; (4) enrolled in counseling; (5) attends AA/NA meetings; and (6) has been sober since November 5, 2012 – although he was in jail for eight months of that time.

The juvenile court concluded neither mother and father made a prima facie showing that was sufficient to warrant setting the issue for an evidentiary hearing. The court explained that although mother's and father's "circumstances were changing," it was only the time and place of the happenings that were different. The court said T.'s need for a stable placement in a drug-free home outweighed her parents' wish for reunification services. Mother's and father's section 388 petitions were denied.

At the contested section 366.26 hearing on February 19, 2014, the juvenile court found T. had made significant progress in the care of her aunt Valerie R. and was bonded to her as a parent. She was up to date on her immunizations and had been seen as needed by pediatricians and dentists. T. was enrolled as a patient/client of the Regional Center and was being evaluated to determine which early intervention services she was to

4

receive to manage the issues arising from her pre- and post-natal exposure to the use of methamphetamine by her mother. Social workers testified that T.'s aunt was eager to adopt her and that in the unlikely event that was not possible, there were other family members and non-family members that were willing to adopt her. The HSA's section 366.26 report said T. would not suffer harm if the parental rights of mother and father were terminated. The trial court found that T. would not benefit from continuing the parent-child relationship and that the sibling relationship exception did not bar adoption.

The juvenile court ordered adoption as the permanent plan, terminated the parental rights of mother and father and referred T. to the county adoption agency for adoptive placement.

## DISCUSSION

### Section 388 Petition

Father argues that the trial court erred in denying his petition for a hearing to determine whether family reunification services should be ordered. Mother joins in this argument.

The grant or denial of a section 388 petition is committed to the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is clearly established. (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71.) The parent bears the burden of showing both a change of circumstances and that the proposed modification of the existing orders is in the child's best interests. (*In re S.J.* (2008) 167 Cal.App.4th 953, 959.)

Section 388, subdivision (a)(1) provides that "[a]ny parent . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify or set aside any [existing court order]." Subdivision (d) of the section requires the court to order a hearing "[if] it appears that the best interests of the child . . . may be promoted by the proposed change . . . ." When family reunification services have been denied, the petitioning parent only qualifies for a hearing if he or she shows (1) that there has been a material change in the circumstances that produced the dependency and

5

(2) that *reunification* – not reunification services for a parent – is in the best interests of the child.

Father and mother claim they enrolled in a residential drug treatment programs, attend AA/NA meetings and that they have been sober and attentive to T. since she was detained. Even if this were true, it was not an abuse of discretion for the trial court to conclude that neither father nor mother showed a material change of circumstances that warranted a hearing on their section 388 petitions. (See, e.g., *In re Casey D.* (1999) 70 Cal.App.4th 38, 48-49.)

Father claims a lengthy period of sobriety, but eight months of his abstinence was involuntary. He chose to use drugs before, during and after mother's pregnancy with T. and did nothing to protect the child from the effects of her mother's use of methamphetamine.

Mother has a history of chronic, untreated drug use. Mother participated in the brutal killing of an infant entrusted to her care. She was willing during her pregnancy with T. to expose her to the risk of injury, disability or death to satisfy her urge to use methamphetamine and heroin.

Mother gave birth to six children, including T. Her parental rights to three of her children were terminated and her petition for an order requiring that she be provided reunification services for two of her children was denied. Mother's enrollment in an in-patient drug treatment program came almost a year after T. was detained.

Nor was the showing by father and mother sufficient to show *reunification* is in T.'s best interest. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 465.) The question is not whether ordering HSA to provide reunification services to father and mother is in T.'s best interest. The issue is whether the parents' showing is sufficient to warrant an order setting the issue for an evidentiary hearing on whether *reunification* is in the best interests of the children. (§ 361.5, subd. (c); *In re D.F.* (2009) 172 Cal.App.4th 538, 548.) For all the reasons cited above it is not.

6

The evidence clearly shows that reunification would be detrimental to T. and undermine the permanency and stability of an adoptive placement that she so badly needs. A section 388 "petition which alleges merely changing circumstances . . . would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests. [Citation.]" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)

*Beneficial Parent-Child Relationship Exception*

Father asserts that the beneficial parent-child relationship exception bars termination of his parental rights. (§ 366.26, subd. (c)(1)(B)(i).) Mother joins in this argument.

Where the dependent child is adoptable, the juvenile court must terminate parental rights at the section 366.26 hearing unless the parent shows that the parent-child bond is a substantial positive emotional attachment such that the child would be greatly harmed if parental rights were terminated. (*In re Helen W.* (2007) 150 Cal.App.4th 71, 81.) To meet that burden of proof, a parent must show more than frequent or pleasant visits. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 229.) The parent must show that he or she occupies a parental role in the child's life, resulting in a significant, positive, emotional attachment from child to parent. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; *In re Elizabeth M.* (1997) 52 Cal.App.4th 318, 324.)

It is undisputed that T. is adoptable. T. is two years old and spent only six weeks in the care of her mother after she was born. Father has never had T. in his custody. The trial court reasonably concluded that mother's and father's relationship with T. bears no resemblance to the sort of consistent, daily nurturing that marks a parental relationship. (See, e.g., *In re Derek W.* (1999) 73 Cal.App.4th 823, 827.) The benefit, if any, of returning T. to her mother or father is far outweighed by the stability and care she has received and will continue to receive from her aunt Valerie.

We reject the argument that the beneficial parental relationship applies. "The reality is that childhood is brief; it does not wait until a parent rehabilitates himself

7

or herself.  The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it." (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038.)

The judgment (order) denying the section 388 petition and terminating parental rights is affirmed.

NOT TO BE PUBLISHED.


BURKE, J.[*]


We concur:


GILBERT, P. J.


PERREN, J.

---

[*] (Judge of the Superior Court of San Luis Obispo County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

Bruce A. Young and Ellen Gay Conroy, Judges

Superior Court County of Ventura

_____

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant Randy O.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant Teresa T.

Leroy Smith, County Counsel, county of Ventura, Ronda J. McKaig, Assistant County Counsel for Plaintiff and Respondent.